### UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF LOUISIANA

**RONALD SINGLETON**                                                          **CIVIL ACTION**

**VERSUS**                                                                    **NO. 15-6451**

**N. BURL CAIN**                                                              **SECTION "H"(4)**


### REPORT AND RECOMMENDATION

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing if necessary, and to submit proposed findings and recommendations pursuant to **28 U.S.C. § 636(b)(1)(B) and (C)**, and as applicable, **Rule 8(b) of the Rules Governing Section 2254 Cases**. Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing. *See* 28 U.S.C. § 2254(e)(2) (2006).[1]

### I.    Factual Background

The petitioner, Ronald Singleton ("Singleton"), is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] On December 5, 1996, Singleton and two co-defendants, Leroy A. Davis and Carlos D. Lawrence, were indicted by a Jefferson Parish Grand Jury for the second degree murder of Lee Roy Woodard.[3] The charges against Davis and Lawrence were reduced on August 20, 1997, to accessory after the fact to second degree murder.[4] In the

---

[1]Under 28 U.S.C. § 2254(e)(2), an evidentiary hearing is held only when the petitioner shows that either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable or a factual basis that could not have been previously discovered by the exercise of due diligence and the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner.

[2]Rec. Doc. No. 3.

[3]St. Rec. Vol. 1 of 7, Indictment, 12/5/96.

[4]*Id*. (see handwritten amendment dated 8/20/97).

meantime, Singleton entered a plea of not guilty to the charge on December 12, 1996.[5]  He later changed his plea to not guilty and not guilty by reason of insanity.[6]

The record reflects that, on October 31, 1996, Singleton was home with his daughter when he received a telephone call from his friend Carlos Lawrence.[7]  Lawrence told Singleton that Woodard and two friends were armed and looking for Singleton.  Singleton had prior altercations with Woodard, including a prior shooting incident, a "pistol whipping" of Singleton by Woodard, and Woodard burning Singleton's car.  As a result, Singleton was generally scared of Woodard. Approximately ten minutes after receiving this call, Singleton saw a red Cutlass driving in front of his house.  Woodard's friend Reggie owned a red Cutlass and they were often seen riding in that car. Singleton became frightened and took his daughter to his brother's house.

Singleton then went to a club with his friends.  When they saw a red Cutlass pull up to the club, the men left and went to Schnell's Restaurant.  As Singleton was walking into the restaurant, he saw Woodard staring at him and he became tense, nervous, and scared for his life.  Singleton then saw Woodard reach into his car to get something from under the seat.  At this point, Singleton closed his eyes and started shooting his gun toward Woodard from about one car length away. Singleton shot because he thought Woodard was going to pull a gun him.  Woodard died of a gunshot wound to the chest.

---

[5]St. Rec. Vol. 1 of 7, Minute Entry, 12/12/96.

[6]St. Rec. Vol. 1 of 7, Minute Entry, 3/25/97.

[7]The facts were taken from the published opinion of the Louisiana Fifth Circuit Court of Appeal on direct appeal.  *State v. Singleton*, 723 So.2d 484, 486-87 (La. App. 5th Cir. 1998); St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 98-KA-387, pp. 2-5, 10/28/98.

After being found competent to stand trial, Singleton was tried before a jury on April 3, 4, 7, and 8, 1997, and was found guilty as charged.[8]  The Trial Court sentenced Singleton on May 19, 1997, to life in prison without benefit of parole, probation, or suspension of sentence.[9]

On direct appeal to the Louisiana Fifth Circuit Court of Appeal, in addition to seeking an error's patent review, Singleton's appointed counsel asserted the following errors:[10] (1) the Trial Court erred in denying the motion to suppress; (2) the Trial Court erred by allowing the State during rebuttal to play selected portions of a taped statement from Singleton to the forensic psychiatrist; and (3) the Trial Court erred by denying the motion for mistrial based on the State's reference to Singleton's incarceration at the time of trial.

The Louisiana Fifth Circuit affirmed the conviction on October 28, 1998, finding no merit in the third issue, finding the first claim to be a new issue improperly raised for the first time on appeal, and alternatively to be without merit, and finding that Singleton's right to urge the second issue was waived.[11]  The Court, however, remanded the matter for the Trial Court to advise Singleton of the prescriptive period for seeking post-conviction relief.  The Trial Court complied with this directive on November 10, 1998.[12]

---

[8]St. Rec. Vol. 1 of 7, Minute Entry, 4/3/97; Trial Minutes, 4/3/97; Trial Minutes, 4/4/97; Trial Minutes, 4/7/97; Trial Minutes, 4/8/97; Jury Verdict, 4/8/97; Hearing Transcript, 4/3/97; Trial Transcript, 4/4/97; St. Rec. Vol. 2 of 7, Trial Transcript (continued), 4/4/97; Trial Transcript, 4/7/97; Trial Transcript, 4/8/97.

[9]St. Rec. Vol. 1 of 7, Sentencing Minutes, 5/19/97; St. Rec. Vol. 2 of 7, Hearing Transcript, 5/19/97.

[10]St. Rec. Vol. 2 of 7, Appeal Brief, 98-KA-387, 5/13/98.

[11]*Singleton*, 723 So.2d at 484; St. Rec. Vol. 3 of 7, 5th Cir. Opinion, 98-KA-387, 10/28/98.

[12]St. Rec. Vol. 3 of 7, Letter from Trial Court, 11/10/98.

Singleton's conviction and sentence became final thirty (30) days later, on November 27, 1998,[13] because he did not seek rehearing or timely review in the Louisiana Supreme Court. *Butler v. Cain*, 533 F.3d 314 (5th Cir. 2008) (appeal is final when the state defendant does not timely proceed to the next available step in an appeal process) (citing *Roberts v. Cockrell*, 319 F.3d 690, 694-95 (5th Cir. 2003)).[14]

Over two weeks later, on December 14, 1998, Singleton submitted an untimely writ application to the Louisiana Supreme Court seeking review of his direct appeal.[15] The Louisiana Supreme Court denied the application without stated reasons on May 7, 1999.[16]

Almost one year later, on April 23, 2000, Singleton submitted an application for post-conviction relief to the state trial court in which he asserted the following grounds for relief:[17] (1) his taped statement was involuntarily given and induced by the detective; (2) the Trial Court's instruction to the jury regarding Singleton's insanity at the time of the offense deprived him of due process; (3) the grand jury indictment violated the Constitution because blacks were excluded from serving as grand jury forepersons; (4) the procedures for selecting grand jury foreperson were susceptible to abuse and violated the Constitution; (5) counsel was ineffective for failing to request that the entire recorded statement be played to the jury, for abandoning the insanity defense, for

---

[13]Louisiana did not have a recognized Acadian Day holiday on Friday, November 27, 1998.

[14]Pursuant to La. S. Ct. R. X§5, petitioner had 30 days from the issuance of the state appellate court's decision to mail or file a timely writ application in the Louisiana Supreme Court, which he did not do.

[15]St. Rec. Vol. 6 of 7, La. S. Ct. Writ Application, 99-KH-0101, 1/13/99 (dated 12/14/98); St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 99-KH-0101, 1/13/99.

[16]*State v. Singleton*, 741 So.2d 30 (La. 1999); St. Rec. Vol. 3 of 7, La. S. Ct. Order, 99-KH-0101, 5/7/99.

[17]St. Rec. Vol. 3 of 7, Application for Post-Conviction Relief, 5/8/00 (dated 4/23/00).

failing to file a motion to quash the indictment, and for failure to object to the Trial Court's insanity instruction.

The Trial Court denied the application on July 19, 2000, finding that claims one, two and five were procedurally barred from review because they could have been raised on direct appeal and review of claims three and four was waived because no pretrial motion to quash had been filed.[18]

The Louisiana Fifth Circuit denied Singleton's related writ application on November 13, 2000, finding no error in that ruling.[19]   The Louisiana Supreme Court also denied Singleton's writ application without stated reasons on August 31, 2001.[20]

Over seven years later, on December 29, 2008, Singleton through retained counsel filed a petition for writ of habeas corpus to the Trial Court asserting that the Trial Court erred in instructing the jury regarding the statutory presumption of intent.[21]   The Trial Court denied relief on January 20, 2009, finding that the motion was improper and should have been filed as a post-conviction application, and either way, was untimely filed and barred by post-conviction rules.[22]

Two-years later, on January 31, 2011, Singleton's counsel filed an application for post-conviction relief asserting the following grounds for relief: (1) Singleton's sentence was

---

[18]St. Rec. Vol. 3 of 7, Trial Court Order, 7/19/00.

[19]St. Rec. Vol. 3 of 7, 5th Cir. Order, 00-KH-1740, 11/13/00.

[20]*State ex rel. Singleton v. State*, 795 So.2d 1208 (La. 2001); St. Rec. Vol. 3 of 7, La. S. Ct. Order, 2000-KH-3500, 8/31/01; La. S. Ct. Letter, 2000-KH-3500, 12/21/00; St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 00-KH-3500, 12/21/00 (dated 12/5/00).

[21]St. Rec. Vol. 3 of 7, Petition for Writ of Habeas Corpus, 12/29/08.

[22]St. Rec. Vol. 3 of 7, Trial Court Order, 1/20/09.

unconstitutionally excessive in light of his history of mental incapacity; and (2) the non-unanimous verdict was unconstitutional.  After receiving a response from the State, the Trial Court denied relief on the application finding no merit in either claim.[23]

The Louisiana Fifth Circuit denied Singleton's counsel-filed writ application on May 19, 2011, finding no error in the Trial Court's ruling.[24]  The Louisiana Supreme Court also denied Singleton's counsel-filed writ application on January 13, 2012, as untimely filed under La. Code Crim. P. art. 930.8 and *State ex rel. Glover v. State*, 660 So.2d 1189 (La. 1995) and for seeking improper post-conviction review citing La. Code Crim. P. art. 930.3 and *State ex rel. Melinie v. State*, 665 So.2d 1172 (La. 1996).[25]

Over three and one-half years later, on September 2, 2014, Singleton through new counsel filed another application for post-conviction relief asserting claims of ineffective assistance of counsel for failure to investigate and call an eyewitness and actual innocence based on the new eyewitness testimony.[26]  After receiving additional briefing, the Trial Court denied the application finding no merit in the ineffective assistance claim and no cognizable stand-alone claim of actual innocence under La. Code Crim. P. art. 930.3.[27]

---

[23]St. Rec. Vol. 3 of 7, Trial Court Oder, 3/25/11; Trial Court Order, 2/8/11; State's Opposition, 3/4/11.

[24]St. Rec. Vol. 3 of 7, 5th Cir. Order, 11-KH-430, 5/19/11; St. Rec. Vol. 6 of 7, 5th Cir. Writ Application, 11-KH-430, 4/25/11.

[25]*State ex rel. Singleton v. State*, 77 So.3d 953 (La. 2012); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2011-KP-1298, 1/13/12; St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 11-KP-1298, 6/21/11; St. Rec. Vol. 3 of 7, La. S. Ct. Letter, 2011-KP-1298, 6/21/11.

[26]St. Rec. Vol. 5 of 7, Application for Post-Conviction Relief, 9/2/14; Memorandum in Support, 9/2/14.

[27]St. Rec. Vol. 5 of 7, Trial Court Oder, 1/15/15; Trial Court Order, 9/22/14; State's Opposition, 10/22/14; Traverse, 11/6/14.

The Louisiana Fifth Circuit denied Singleton's counsel-filed writ application finding no error in the Trial Court's ruling.[28]  On October 30, 2015, the Louisiana Supreme Court denied the writ application brought by counsel in that Court finding that it was untimely filed under La. Code Crim. P. art. 930.8 and *State ex rel. Glover*, 660 So. 2d at 1189.[29]  The Court also commented that there was no error in the lower courts' rulings.

In the meantime, on September 28, 2015, Singleton returned to the Trial Court with an application for post-conviction relief asserting five grounds for relief:[30] (1) prosecutorial misconduct through suppression of evidence and false testimony; (2) testing for gunshot residue on the victim's clothing will show whether evidence was withheld that would show petitioner did not have the intent to kill; (3) trial counsel was ineffective for failing to investigate an alibi; (4) post-conviction counsel was ineffective for failing to review state court records and investigate the alibi defense with a supporting affidavit; and (5) failure to comply with sequestration rules denied him a fair trial.

On September 30, 2015, Singleton also filed a petition for writ of habeas corpus asserting that the Trial Court lacked jurisdiction over his case because of defects in the grand jury indictment.[31]  Singleton withdrew this pleading on October 23, 2015.[32]

---

[28]St. Rec. Vol. 3 of 7, 5th Cir. Order, 15-KH-124, 2/24/15; St. Rec. Vol. 6 of 7, 5th Cir. Writ Application, 15-KH-124, 2/20/15.

[29]*State v. Singleton*, 178 So.3d 556 (La. 2015); St. Rec. Vol. 5 of 7, La. S. Ct. Order, 2015-KP-0765, 10/30/15; La. S. Ct. Letter, 2015-KP-765, 4/16/15; St. Rec. Vol. 7 of 7, La. S. Ct. Writ Application, 15-KP-765, 4/16/15.

[30]St. Rec. Vol. 5 of 7, Application for Post-Conviction Relief, 9/28/15 (dated 9/7/15); Memorandum in Support, 9/28/15 (dated 9/7/15).

[31]St. Rec. Vol. 5 of 7, Petition for Writ of Habeas Corpus, 9/30/15 (dated 9/7/15).

[32]St. Rec. Vol. 5 of 7, Trial Court Order, 10/23/15; Notice, 10/20/15 (dated 10/6/15).

After receiving a response from the State, the Trial Court denied the application on December 10, 2015, as untimely filed under La. Code Crim. P. art. 930.8.[33]  In addition, the Court found claims one, two, and five barred from review as successive under La. Code Crim. P. art. 930.4(E). and claim four presented no basis for post-conviction review.[34]

## II.    Federal Habeas Petition

On December 9, 2015, the clerk of this Court filed Singleton's petition for federal habeas corpus relief in which he asserts the following grounds for relief:[35] (1) Ineffective assistance of counsel for failure to investigate a self-defense theory; and (2) He is actually innocent under Louisiana law based on self-defense.

The State filed a response in opposition to the petition arguing that the petition was not timely filed under federal law, and Singleton does not meet an exception to excuse his untimely filing.[36]  The State also contends that the claims are in procedural default as having been untimely presented and procedurally barred in the state courts.

## III.   General Standards of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214,[37] applies to this petition, which is deemed filed in this Court under the federal

---

[33]St. Rec. Vol. 5 of 7, Trial Court Order, 12/10/15; Trial Court Order, 9/30/15; State's Opposition, 10/23/15; Traverse, 11/12/15.

[34]The state court record provided by the State reflects that on January 15, 2016, Singleton submitted a writ application to the Louisiana Fifth Circuit seeking review of the Trial Court's ruling.  St. Rec. Vol. 6 of 7, 5th Cir. Writ Application, dated 1/15/16.

[35]Rec. Doc. No. 3.

[36]Rec. Doc. No. 18.

[37]The AEDPA comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254, and applied to habeas petitions filed after its effective date, April 24, 1996. *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).  The AEDPA, signed into law on that date, does not specify

mailbox rule on December 1, 2015.[38]   The threshold questions on habeas review under the amended statute are whether the petition is timely and whether the claim raised by the petitioner was adjudicated on the merits in state court; *i.e.*, the petitioner must have exhausted state court remedies and the claims must not be in "procedural default."   *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

As indicated above, the State contends that Singleton's petition was not timely filed under federal law, he has failed to establish an exception that would allow him to proceed with his untimely petition and his claims are otherwise in procedural default because they were untimely presented in the state courts.   Although the State's finality and timeliness calculation contains errors, the conclusion is correct that Singleton's petition was untimely filed and should be dismissed for that reason and those that follow.

## IV.   <u>Statute of Limitations</u>

The AEDPA requires a petitioner to bring his § 2254 claim within one year of the date his conviction became final.[39]   *Duncan v. Walker*, 533 U.S. 167, 176-80 (2001).   As calculated above,

---

an effective date for its non-capital habeas corpus amendments.   Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law.   *United States v. Sherrod*, 964 F.2d 1501, 1505 n.11 (5th Cir. 1992).

[38]The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting pro se. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The clerk of court docketed Singleton's federal habeas petition on December 9, 2015, when it was electronically received from Singleton, and the case was opened on December 28, 2015, when the filing fee was paid.   According to the official stamp of the prison, Singleton delivered his pleadings to prison officials on December 1, 2015, for electronic mailing to this Court, which was done that same day.   Rec. Doc. No. 3, p. 25.   The fact that he later paid the filing fee does not alter the application of the federal mailbox rule to his pro se petition. See *Cousin v. Lensing*, 310 F.3d 843, 847 (5th Cir. 2002) (mailbox rule applies even if the filing fee is not paid at time of mailing) (citing *Spotville*, 149 F.3d at 376).

[39]The statute of limitations provision of the AEDPA provides for other triggers which do not apply here:
(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.   The limitation period shall run from the latest

Singleton's conviction was final under federal law on November 27, 1998, when he did not seek timely review of his direct appeal in the Louisiana Supreme Court.  Pursuant to § 2244, Singleton had one year from that date, or until Monday, November 29, 1999,[40] to timely file a federal application for habeas corpus relief which he did not do.  Thus, literal application of the statute would bar Singleton's petition as of that date unless he is entitled to tolling as provided for under the AEDPA.

### A.      <u>Statutory Tolling</u>

Section 2244(d)(2) provides that the time during which a properly filed application for state post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation.  *See* 28 U.S.C. § 2244(d)(2).  In order for a state post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must have complied with all of the State's procedural requirements, such as timeliness and place of filing.  *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14 (2005); *Williams v. Cain*, 217 F.3d 303, 306-08 & n.4 (5th Cir. 2000) (quoting *Smith v. Ward*, 209 F.3d

---

of--

    A.      the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;

    B.      the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;

    C.      the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

    D.      the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

(2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.  28 U.S.C. § 2244(d).

[40]The one-year ended on Saturday, November 27, 1999.  Under both state and federal law, the time period falls to the next business day, Monday, November 27, 1999.  See La. Code Crim. P. art. 13; Fed. R. Civ. P. 6.

383, 384-85 (5th Cir. 2000)); *Villegas v. Johnson*, 184 F.3d 467, 468-69 (5th Cir. 1999), *reh'g denied*, 196 F.3d 1259 (5th Cir. 1999).  For purposes of the AEDPA, a timeliness calculation in Louisiana requires the application of the prison mailbox rule to state pleadings.  *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).  The Court has applied this rule in presenting the procedural history recited above.

A matter is "pending" for §  2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"  *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (quoting *Bennett v. Artuz*, 199 F.3d 116, 120 (2d Cir. 1999)) (finding that a matter is "pending" for Section 2244(d)(2) purposes until further appellate review is unavailable under Louisiana's procedures.'"); *see also Melancon v. Kaylo*, 259 F.3d 401, 405 (5th Cir. 2001).

The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition. *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (finding that a state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, 264 F.3d 310, 316 (3d Cir. 2001), *overruled on other grounds by Carey*, 536 U.S. 214 (finding that a motion to withdraw a guilty plea is "other collateral review").  A "pertinent judgment or claim" requires that the state filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims now being raised in the federal habeas corpus petition.  *Godfrey v. Dretke*, 396 F.3d 681, 687-88 (5th Cir. 2005).

However, requests for document and transcript copies like those pursued by the petitioner in the state courts are not "other collateral review" for purposes of the tolling calculation. *Osborne v. Boone*, 176 F.3d 489, 1999 WL 203523, at *1 (10th Cir. Apr. 12, 1999) (motion for transcript copies is not "other collateral review" for tolling purposes); *Brown v. Cain*, 112 F. Supp. 2d 585, 587 (E.D. La. 2000), *aff'd*, 239 F.3d 365 (5th Cir. 2000); *Gerrets v. Futrell*, No. 01-3080, 2002 WL 63541, at *1 (E.D. La. Jan. 16, 2002) (Vance, J.); *Jones v. Johnson*, No. 01-CV-0115-G, 2001 WL 1006062, at *3 (N.D. Tex. Aug. 13, 2001) (petitioner should file application and then continue to gather transcripts); *Grayson v. Grayson*, 185 F. Supp. 2d 747, 751-52 (E.D. Mich. Jan. 3, 2002) (delay in receipt of transcript not required to file the application, does not warrant equitable tolling).

In the instant case, the AEDPA one-year filing period began to run on November 28, 1998, the day after Singleton's conviction was final. The filing period continued to run uninterrupted for one year until Monday, November 29, 1999, when it expired. Singleton had no properly filed state application for post-conviction or other collateral review pending during that time.

The Court recognizes that Singleton submitted an untimely writ application to the Louisiana Supreme Court during that period on December 14, 1998. However, this untimely filing did not change the finality of his conviction or provide him with statutory tolling. Under La. S. Ct. Rule X § 5, an application seeking review of a judgment by the court of appeal shall be filed or postmarked within thirty (30) days of the issuance of the judgment under review or denial of a timely filed application for rehearing. *Accord Wilson v. Cain*, 564 F.3d 702 (5th Cir. 2009). Of course, for prisoners, the appropriate mailbox rule is also applied. *Causey*, 450 F.3d at 604-05.

As outlined above, the Louisiana Fifth Circuit affirmed Singleton's conviction on direct appeal by its opinion issued October 28, 1998.  Singleton signed and submitted his writ application to the Louisiana Supreme Court on December 14, 1998, which was forty-seven days after the appellate court's ruling.  This clearly was not within the 30-day time limit allowed under La. S. Ct. Rule X § 5.  A writ application which fails to comply with La. S. Ct. Rule X § 5 is not "properly filed" because it is untimely, and it is not pending as post-conviction review for purposes of the AEDPA's statute of limitations and tolling doctrines.  *Butler*, 533 F.3d at 318-319; *Larry v. Dretke*, 361 F.3d 890, 897 (5th Cir. 2004) (failure to file state pleadings in the time-frame provided for under state law rendered the pleadings not properly filed); *Wardlaw v. Cain*, 541 F.3d 275, 279 (5th Cir. 2008) (same).  The United States Supreme Court has made clear that "[w]hen a post-conviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)."  *Pace*, 544 U.S. at 414 (quoting *Carey*, 536 U.S. at 226).  The petitioner's Louisiana Supreme Court writ application did not interrupt or toll the AEDPA filing period, which expired on November 29, 1999, as calculated above.

Even if a reviewing court were inclined to forgive his untimely filing in the state's highest court, Singleton's federal petition was not filed in a timely manner.  The Louisiana Supreme Court denied the untimely application on May 7, 1999.  Singleton waited 351 days before submitting his first state application for post-conviction relief to the state trial court on April 23, 2000.  As outlined previously, this application was ultimately resolved on procedural grounds ending with the Louisiana Supreme Court's denial of relief on the related writ application on August 31, 2001.

Singleton thereafter waited <u>seven years, three months and twenty-nine days</u> to file his next state post-conviction pleading through retained counsel on December 29, 2008.  After the Trial

Court resolved on January 20, 2009, that the proceeding was procedural barred and untimely, Singleton's counsel waited <u>two years</u> to file a subsequent state application for post-conviction relief which was ultimately denied for seeking untimely and improper post-conviction relief under La. Code Crim. P. arts. 930.8 and 930.3. Singleton waited another <u>three years</u> before filing through new counsel another untimely state post-conviction application finally resolved by the Louisiana Supreme Court on October 30, 2015. Although the record suggests that Singleton has not stopped pursuing state post-conviction relief, the record is <u>clear</u> that Singleton did not seek federal habeas corpus relief for over **<u>seventeen years</u>** after his conviction became final on November 27, 1998, and over sixteen years after the Louisiana Supreme Court denied his untimely, post-appeal writ application on May 7, 1999.

For these reasons, Singleton's federal petition deemed filed on December 1, 2015, was not timely filed in this Court under the AEDPA.

**B.   <u>No Equitable Tolling</u>**

The post-AEDPA jurisprudence also provides for equitable tolling where rare or extraordinary circumstances may have prevented a diligent petitioner from timely pursuing federal habeas corpus. *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999), *cert. denied*, 531 U.S. 1164 (2001); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810-11 (5th Cir. 1998), *cert. denied*, 526 U.S. 1074 (1999). Equitable tolling is warranted <u>only</u> in situations where the petitioner was actively misled or is prevented in some extraordinary way from asserting his rights. *Pace*, 544 U.S. at 418-19; *see Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

Equitable tolling has only been extended under extraordinary circumstances outside the control of the petitioner. *See Holland v. Florida*, 560 U.S. 631, 652-53 (2010) (finding that equitable tolling was warranted where attorney was more than negligent when he failed to satisfy professional standards of care by ignoring the client's requests to timely file a federal petition and in failing to communicate with the client over a period of years in spite of the client's letters); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (finding that equitable tolling was warranted where petitioner suffered a significant state-created delay when, for nearly one year, the state appeals court failed in its duty under Texas law to inform him that his state habeas petition had been denied, petitioner diligently pursued federal habeas relief, and he persistently inquired to the court.); *United States v. Wynn*, 292 F.3d 226, 230 (5th Cir. 2002) (finding that tolling was warranted when defendant was deceived by attorney into believing that a timely motion to vacate was filed); *Coleman v. Johnson*, 184 F.3d 398, 402 (5th Cir. 1999) ("A garden variety claim of excusable neglect does not support equitable tolling.") (quotation omitted); *Fisher*, 174 F.3d at 715 (finding that tolling is not justified during petitioner's 17-day stay in psychiatric ward, during which he was confined, medicated, separated from his glasses and thus rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (finding that State's alleged failure to appoint competent habeas counsel did not justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court three times extended the deadline to file habeas corpus petition beyond expiration of AEDPA grace period).

Singleton has not presented, and the record does not demonstrate, any basis for extending the extraordinary remedy of equitable tolling to the § 2244(d) calculation. The record does not

contain any of the extraordinary circumstances previously recognized by the precedent cited above that would warrant equitable tolling.  The record instead reflects simply that the petitioner did not timely pursue his state post-conviction relief or federal habeas review.  There is no basis for equitable tolling in this case.

### C.   *Martinez* is Not Applicable Here

Under a broad reading, Shank contends that this Court should excuse the procedural bar to his untimely filed state post-conviction applications and consider the merits of his claims. However, the United States Supreme Court's holdings in *Martinez*, 132 S. Ct. at 1309 and *Trevino v. Thaler*, __ U.S. __, 133 S. Ct. 1911 (2013), do not provide a basis for review of this untimely filed federal petition or his ineffective assistance of counsel claim.

In *Martinez*, the Court held that a state imposed "'procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [State's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'" *Trevino*, 133 S. Ct. at 1912 (quoting *Martinez*, 132 S. Ct. at 1320) (emphasis added). The bar to review at issue in this case arises from petitioner's failure to meet the federal limitations deadline under the AEDPA.  The *Martinez* and *Trevino* decisions do not address or provide an excuse for the untimely filing of a federal habeas petition.  *See*, *Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at * 1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun.13, 2014) (Order adopting Report).

These cases also do not constitute new rules of constitutional law made retroactive on collateral review that would start a new one-year filing period under the AEDPA.  *See*, *In re Paredes*, No. 14-51160, 2014 WL 5420533, at *6 (5th Cir. Oct. 25, 2014) ("... the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012).  For these reasons, neither *Martinez* nor *Trevino* provide petitioner a basis for relief from the failure to meet the AEDPA's limitations period.

### D.   No Actual Innocence Exception

Singleton has urged this Court and the state courts to consider that he has new evidence of his actual innocence based on affidavits from Alonzo Ford and Michael Lott, which he claims tend to support his claim of self-defense.  *See* Rec. Doc. No. 3, pp. 19-21.  The United States Supreme Court has **not** recognized a free-standing claim of actual innocence on federal habeas review. *McQuiggin v. Perkins*, __ U.S. __, 133 S. Ct. 1924, 1931 (2013) (citing *Herrera v. Collins*, 506 U.S. 390, 404-05 (1993)).  The Court instead has recognized that a credible showing of actual innocence may act as a gateway to overcome a procedurally defaulted or untimely filed federal habeas corpus claim.  *McQuiggin*, 133 S. Ct. at 1931.

Thus, under a broad reading, Singleton may intend for the Court to consider the actual innocence exception to the state imposed procedural bar to review of his federal habeas claim of ineffective assistance of counsel.  Nevertheless, Singleton has failed to make the required and credible threshold showing of his actual innocence to excuse his untimely filing under the AEDPA.

In *McQuiggin*, the Supreme Court held "that actual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or,

as in this case, expiration of the statute of limitations." *Id.*, at 1928.  In recognizing the stringent standards of this exception to § 2244(d), the Supreme Court held that " [t]o invoke the miscarriage of justice exception to AEDPA's statute of limitations, we repeat, a petitioner 'must show that it is more likely than not that no reasonable juror would have convicted him in the light of the new evidence.'" *Id.*, at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)).  In addition, the actual innocence gateway should open only when the "evidence of innocence is so strong that a court cannot have confidence in the outcome of the trial." *Id.* at 1936 (citation omitted).  The Court must consider "the probative force of relevant evidence that was either excluded or unavailable at trial." *Schlup*, 513 U.S. at 327-28.  "It is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses; rather the standard requires the district court to make a probabilistic determination about what reasonable, properly instructed jurors would do." *Id.* at 329.

A petitioner must show factual innocence through the presentation of "new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence." (emphasis added) *Schlup*, 513 U.S. at 324; *see Stroman v. Thaler*, 405 F. App'x 933, 934-35 (5th Cir. 2010).  The United States Fifth Circuit Court of Appeals has held that evidence is "not 'new' [when] it was always within the reach of [petitioner's] personal knowledge or reasonable investigation." *Moore v. Quarterman*, 534 F.3d 454, 465 (5th Cir. 2008). The *Schlup* decision, however, did not require that the evidence be newly discovered, only that it be reliable and not have been presented at trial.  *Gladney v. Pollard*, 799 F.3d 889, 898 (7th Cir. 2015) (citing *Schlup*, 513 U.S. at 324).

Instead, the delay in presenting new but previously known or discoverable evidence is relevant to the credibility of the actual innocence claim and "as part of the assessment whether actual innocence has been convincingly shown." *McQuiggin*, 133 S. Ct. at 1935-36. The Supreme Court has made clear that "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of ... evidence [of actual innocence]." *Schlup*, 513 U.S. at 332; *McQuiggin*, 133 S. Ct. at 1935; *see also*, *House*, 547 U.S. at 537. The *McQuiggin* was clear that "[t]he timing of such a petition, however, should seriously undermine the credibility of the actual-innocence claim." 133 S. Ct. at 1936.

In this case and under these standards, Singleton has not presented <u>reliable</u> new evidence of his factual innocence, much less evidence that would convince the Court that no juror would have found him guilty. *Accord*, *Golmon v. Director, TDJC-CID*, No. 13CV325, 2013 WL 3724838, at *1 (E.D. Tex. Jul. 15, 2013). Considering the affidavits on which Singleton relies, the Court does not find that trustworthy or reliable for the following reasons.

The affidavits on which Singleton relies were sworn to under the notarial seal of his prior state post-conviction counsel by Alonzo Ford on July 5, 2014 and Michael Lott on August 25, 2015. As was found by the state trial court, the Lott affidavit is far from reliable.

In his affidavit, Lott provides hearsay information that, one week after the murder, his friend Tyrone Gilmore told him that the victim, Lee Roy Woodard, had Lott's gun on the night of the shooting, Gilmore "removed" the gun and gave it to another person, Clifford Lewis,[41] from

---

[41]A key witness to the shooting for the State was named Clifton Lewis. *See* St. Rec. Vol. 1 of 7, Trial Transcript, pp. 48-71. The Court has been unable to determine a relationship between these individuals from the record. Clifton Lewis testified that he did not know Tyrone Gilmore. *Id.*, p. 57-58.

whom Lott later retrieved the gun.[42]  Lott's testimony likely would not have been admissible as rank hearsay but may have posed as an avenue to information available from Gilmore, who has not provided an affidavit nor did he testify at trial.

Nevertheless, as indicated previously, the affidavit was attested to on August 25, 2015, which was almost 19 years after Woodard's murder.  At no time does Lott identify himself as being present at or an eyewitness to the murder that occurred on November 1, 1996.  He does not indicate why he waited to come forward to report this information to Singleton.  He also does not indicate that he would have been willing to testify at Singleton's trial or provide the information to Singleton, the prosecution, or the defense prior to 2014.

Most importantly, even assuming that the hearsay information could have been admissible, Lott does not provide any information that would have altered the verdict in this case.  Lott does not indicate where Woodard allegedly "had" the gun on the night of the murder or establish in any way that Woodard intended to use the gun against Singleton or that he was reaching for the gun when Singleton shot him.  In other words, there is nothing in this affidavit to directly support Singleton's claim of self-defense or establish that no juror would have found Singleton guilty.

The affidavit from Alonzo Ford also fails to meet the *Schlup* or *McQuiggin* narrow tests.  Ford avers that he and Tyrone Gilmore were in Woodard's car waiting for him when the shooting occurred.[43]  Ford asserts that Woodard approached the car and announced that he saw Singleton.  Woodard then reached under the driver's seat, grabbed a 9mm handgun, and raised the gun.  He

---

[42]The record reflects that Tyrone Gilmore was known by the defense at trial to have been present at the shooting, and at the hospital to meet with the police.  *See e.g.*, St. Rec. Vol. 1 of 7, Trial Transcript, pp. 57-58, 72.

[43]St. Rec. Vol. 2 of 7, Trial Transcript, pp. 133-36, 137, 4/7/97.

even states that "[a]t the time Leroy (sic) brandished his weapon Ronald had not drawn a gun." Ford claims that he left the scene to avoid the authorities and Gilmore left his name out of his statement.  He further states that Gilmore also told him that he took the gun and gave it to "Clifford."

As an initial matter, Ford's affidavit is dated July 5, 2014, which was almost 18 years after Woodard's murder and the events he describes.  Ford attests that he would have given the information and testified at trial had he been contacted by defense counsel or Singleton.  The Court finds this curious if not wholly suspect in light of the passage of time, Ford's stated relationship with the victim, Ford's choice to leave the scene "to avoid the authorities," and his apparent contentment with Gilmore's act to keep his name out of the statement to police.  This is not indicative of a person who would readily cooperate with the defense of his friend's murderer.

The record and transcripts also provide no indication that anyone was in Woodard's car at the time of the shooting.  Gilmore was mentioned at trial but not placed in the victim's vehicle or called to testify as an eyewitness by either side.[44]  As outlined above, Clifton Lewis did not mention seeing anyone else in the car or a gun in Woodard's possession.

In addition, as noted by the state courts and the respondent, Ford's factual representations differ from Singleton's statement to police and his trial testimony.  Singleton never testified that Woodard actually had a gun or that he saw a gun or that Woodard pointed a gun at him before he fired.  This calls into question the veracity of Ford's assertions to the contrary.

---

[44]See footnote 42 above.

Singleton consistently testified that he did not know what Woodard would do and only thought he might have gun.[45]  In fact, Singleton initially did not tell police that he shot Woodard because he thought Woodard was reaching for a gun; he instead told the detective that he did not know why he did it.[46]  It was not until trial that Singleton first testified that he thought Woodard might have a gun at the time.[47]  He testified for the first time to several matters at trial that had not been mentioned in his statement to police.  For example, he testified that he and Woodard locked eyes with each other in the parking lot; Woodard continued towards his car and got into the seat; instead of starting the car, Woodard reached down; and, before Woodard could raise himself up, Singleton shot him from about a car length away.[48]  Singleton also testified that he pulled his gun and "ran up" to shoot at Woodard.[49]  Singleton acknowledged on cross-examination, however, that he never told police about the stare down or that Woodard reached for anything; he only told the police he thought Woodard might have a gun because he had guns with him on prior occasions.[50]

Nothing in Ford's affidavit clearly supports Singleton's version of the events and in fact it presents alleged factual information that differs from Singleton's recorded statement and trial testimony.  The jury heard ample testimony from Singleton related to the self-defense theory, *i.e.* that he at least thought Woodard had a gun that he never saw.  Based on the verdict, the jury clearly did not believe his theory or his version of the facts.  In light of the other evidence of guilt,

---

[45] *See .e.g.*, *Id*., p. 142.

[46] *Id*., pp. 92-93, 133-134, 136.

[47] *Id*., pp.136, 140.

[48] *Id.*, pp. 92, 93, 94-95, 137.

[49] *Id.*, p. 93.

[50] *Id*., pp. 94, 137, 138, 140.

Singleton has not established that, even with Ford's attestations as presented in the affidavit, no juror would have found him guilty.

Singleton has not established a credible claim of actual innocence to overcome the statute of limitations and bar to review of his federal claims. Singleton's federal petition deemed filed on December 1, 2015, which was over sixteen (16) years after the one-year AEDPA filing period expired on November 29, 1999, is untimely filed and should be dismissed for that reason.

## V.     Recommendation

For the foregoing reasons, it is **RECOMMENDED** that Ronald Singleton's petition for the issuance of a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 be **DENIED** and **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14) days** after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996).[51]

New Orleans, Louisiana, this 21st day of April, 2016.

_____
**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[51]*Douglass* referenced the previously applicable ten-day period for the filing of objections. Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.